### IN THE UNITED STATE DISTRICT COURT FOR
### THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEANNA PIERCE** | : | **CIVIL ACTION NO. 17-5539** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| | : | |
| **Defendant.** | : | |

### PLAINTIFF'S MOTION PURSUANT TO FEDERAL RULES
### OF CIVIL PROCEDURE 50 AND 59 FOR JUDGMENT AS A
### <u>MATTER OF LAW AND FOR A NEW TRIAL</u>

Plaintiff, Deanna Pierce, respectfully moves this Court pursuant to Fed.R.Civ.P. 50 and 59 to

exercise its discretion, vacate the jury's verdict:

1) as to the issue of race as a motivating factor (Question No. 1), and enter judgment as a

   matter of law that race was a motivating factor in Defendant's decision not to promote

   Plaintiff to Human Services Program Administrator ("HSPA") (and order a new trial as

   to whether Defendant can meet its burden of establishing a limited affirmative defense to

   avoid certain liability). Should the Court not enter judgment as a matter of law, Plaintiff

   respectfully requests that the Court order a new trial as to whether race was a motivating

   factor (Question No. 1) in Defendant's decision not promote her to HSPA.

2) as to the issue of race as a determinative factor (Question No. 3) in the decision not to

   promote Plaintiff to the position of HSPA, and order a new trial;

3) as to the issue of municipal liability pursuant to 42 U.S.C. §1983 (Question No. 4), and

   order a new trial; and

4) as to the award of nominal damages (Question No. 6), and order a new trial.

Support for Plaintiff's Motion is set forth in the accompanying Brief, the substance of which is incorporated herein by reference.

Respectfully submitted,
**CONSOLE MATTIACCI LAW, LLC**


/s/ Laura C. Mattiacci_____
Laura C. Mattiacci, Esq.
Lane Schiff, Esq.
1525 Locust St., Ninth Floor
Philadelphia, PA 19102
(215) 545-7676 (t)
(215) 814-8920 (f)
mattiacci@consolelaw.com
schiff@consolelaw.com
Attorneys for Plaintiff, Deanna Pierce

Dated: February 8, 2019

IN THE UNITED STATE DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEANNA PIERCE** | : | **CIVIL ACTION NO. 17-5539** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION PURSUANT TO FEDERAL
RULESOF CIVIL PROCEDURE 50 AND 59 FOR JUDGMENT AS A
<u>MATTER OF LAW AND FOR A NEW TRIAL</u>**

Respectfully submitted,
**CONSOLE MATTIACCI LAW, LLC**

/s/ Laura C. Mattiacci_____
Laura C. Mattiacci, Esq.
Lane Schiff, Esq.
1525 Locust St., Ninth Floor
Philadelphia, PA 19102
(215) 545-7676 (t)
(215) 814-8920 (f)
mattiacci@consolelaw.com
schiff@consolelaw.com
Attorneys for Plaintiff, Deanna Pierce

Dated: February 8, 2019

## <u>TABLE OF CONTENTS</u>

I.      <u>INTRODUCTION</u>.................................................................................................1

II.     <u>SUMMARY OF MATERIAL EVIDENCE</u>.................................................1

     A. **Defendant Discriminated Against Plaintiff On The Basis Of Race In Failing To Promote Her to The Position Of HSPA**......................................................1

     B. **Plaintiff Suffered Severe Emotional Distress As A Result of Defendant's Retaliatory Conduct**.................................................................................4

III.    <u>**LEGAL ARGUMENT**</u> ...............................................................................6

    A.    **Plaintiff Is Entitled To Judgment As A Matter Of Law That Race Was A Motivating Factor In Defendant's Decision Not to Promote Her to the HSPA Position**.................................................................................................6

    B.    **Plaintiff Is Entitled To A New Trial On The Issues Of Race As A Determinative Factor and Motivating Factor, Should the Court Not Award Plaintiff Judgment As a Matter of Law On Motivating Factor, And Municipal Liability** ............................................................................10

       1.   **The jury's verdict that race was not a motivating factor was contrary to the great weight of evidence and therefore Plaintiff should receive a new trial** ...............................................................................................11

       2.   **The jury's verdict that race was not a determinative factor and that Defendant was not liable under Section 1983 was contrary to the great weight of evidence and therefore Plaintiff should receive a new trial** ...............................................................................................13

       3.   **Defendant's counsel engaged in wholly improper conduct during her closing argument and therefore Plaintiff should  receive a new trial**....................................................…..............................................14

4.  A new trial should be granted because the Court made a significant error of law preventing Plaintiff from introducing evidence that the City hired Commissioner Carney due to her race which severely prejudiced Plaintiff…………………………………………………………………19

5.  A new trial should be granted because the Court made a significant error of law prohibiting Plaintiff from deposing Mayor James Kenney which severely prejudiced Plaintiff ........................................................................20

6.  A new trial should be granted because the Court made a significant error of law allowing Defendant to elicit testimony from Ms. Pierce that she believes she was discriminated against regarding Defendant's failure to promote her to HSPA in 2015 which severely prejudiced Plaintiff...........21

7.  A new trial should be granted because the Court made a significant error of law charging  the jury and on the verdict sheet which greatly prejudiced Plaintiff ...........................................................................22

C.  The Jury's Verdict On The Issue of Damages Was Contrary To The Great Weight Of The Evidence And A Miscarriage Justice Would Result, Such that Plaintiff is Entitled To A New Trial On Damages .............................................23

V.      **CONCLUSION** ........................................................................25

## Table of Authorities

**Cases**

*Allied Chem. Corp. v. Daiflon, Inc.,*
    449 U.S. 33 (1980)……………………………………………………………….………. 11, 23

*Argue v. David Davis Enters.,*
    2009 U.S. Dist. LEXIS 32585 (E.D. Pa. Mar. 20, 2009) ................................... 14

*Belden Tech., Inc. v. Superior Essex Communications LP,*
    802 F. Supp. 2d 555 (D. Del. 2011) ................................................................. 11

*Blancha v. Raymark Indus.,*
    972 F.2d 507 (3d Cir. 1992) ............................................................................. 11

*Desert Palace, Inc. v. Costa,*
    539 U.S. 90 (2003) ...................................................................................... 7, 10

*Draper v. Airco, Inc.,*
    580 F.2d 91 (3d Cir. 1978) ................................................. 14, 16, 17, 19

*Falkowski v. Johnson,*
    148 F.R.D. 132 (D. Del. 1993) ................................................................. 16-17

*Fineman v. Armstrong World Indus., Inc.,*
    980 F.2d 171 (3d Cir. 1992) ............................................................................. 14

*Gilster v. Primebank,*
    747 F.3d 1007 (8   Cir. 2014) ......................................................................... 14

*Gordon v. Mercedes-Benz of N. Am.,*
    1995 U.S. Dist. LEXIS 2324 (E.D. Pa. Feb. 24, 1995) ................................... 18

*Kimes v. Univ. of Scranton,*
    2016 U.S. Dist. LEXIS 44274 (M.D. Pa. Apr. 1, 2016) ................................... 21

*Malleus v. George,*
    641 F.3d 560 (3d Cir. 2011) ............................................................................. 13

*Maylie v. Nat'l R.R. Passenger Corp.,*
    791 F. Supp. 477 (E.D. Pa.1992) ..................................................................... 11

*Moore v. Univ. of Pittsburgh,*
    2005 U.S. Dist. LEXIS 46338 (W.D. Pa. Mar. 11, 2005) ............................... 22

*Ozlek v. Potter,*
    2006 U.S. Dist. LEXIS 19019 (E.D. Pa. Apr. 13, 2006) ................................... 6

*Price Waterhouse v. Hopkins,*
    490 U.S. 228 (1989) ...................................................................................... 7, 10

*Pryer v. C.O. 3 Slavic,*
    251 F.3d 448 (3d Cir. 2001)……………………………………………………11, 23, 24

*Rebmann v. Canning,*
    390 F.2d 71 (3rd Cir. 1968)..................................................................18

*Reeves v. Sanderson Plumbing Products, Inc.,*
    540 U.S. 133 (2000) ........................................................................ 7

*Shanno v. Magee Industrial Enterprises, Inc.,*
    856 F.2d 562 (3d Cir. 2001) ............................................................ 23

*Valentin v. Crozer-Chester Medical Center,*
    986 F. Supp. 292 (E.D. Pa. 1997).....................................................11

*Wagner v. Fair Acres Geriatric Ctr.,*
    49 F.3d 1002 (3d Cir. 1995) ............................................................ 10

*Waite v. Neal,*
    918 F. Supp. 133 (E.D. Pa. 1996) .................................................... 14

*Watson v. SEPTA,*
    207 F.3d 207 (3d Cir. 2000) ............................................................. 7

*Whittenburg v. Werner Enterprises, Inc.,*
    561 F.3d 1122 (10th Cir. 2009) ....................................................... 17

**Statutes**

42 U.S.C. §1983 ................................................................................. *passim*

42 U.S.C. § 2000e-2 ............................................................................. 7

42 U.S.C. § 2000e-5 ............................................................................. 7

**Other**

9B *Wright & Miller, Federal Practice & Procedure §* 2531 (3d ed. 2012).....................................11

Fed. R. Civ. P. 26 .............................................................................. 20

Fed. R. Civ. P. 30 .............................................................................. 20

Fed. R. Civ. P. 50 ....................................................................... 1, 6, 25

Fed. R. Civ. P. 59 .......................................................................... 10, 23

Federal Rule of Evidence 401 ............................................................. 19

Federal Rule of Evidence 403 ............................................................. 19

*Third Circuit Model Jury Instructions* .....................................7, 10, 13, 22

## I.   <u>INTRODUCTION</u>

Plaintiff, Deanna Pierce, respectfully moves this Court pursuant to Fed.R.Civ.P. 50 and 59 to exercise its discretion, vacate the jury's verdict:

1) as to the issue of race as a motivating factor (Question No. 1), and enter judgment as a matter of law that race was a motivating factor in Defendant's decision not to promote Plaintiff to Human Services Program Administrator ("HSPA") (and order a new trial as to whether Defendant can meet its burden of establishing a limited affirmative defense to avoid certain liability). Should the Court not enter judgment as a matter of law, Plaintiff respectfully requests that the Court order a new trial as to whether race was a motivating factor (Question No. 1) in Defendant's decision not promote her to HSPA.

2) as to the issue of race as a determinative factor (Question No. 3) in the decision not to promote Plaintiff to the position of HSPA, and order a new trial;

3) as to the issue of municipal liability pursuant to 42 U.S.C. §1983 (Question No. 4), and order a new trial; and

4) as to the award of nominal damages (Question No. 6), and order a new trial.

## II.   <u>SUMMARY OF MATERIAL EVIDENCE</u>

### A. Defendant Discriminated Against Plaintiff On The Basis Of Race In Failing To Promote Her To The Position Of HSPA

Plaintiff, Deanna Pierce, is a non-Hispanic, Native American, woman. (Trial Transcript 1/8/19, attached hereto as Exhibit A, at 38:4-5).[1] Ms. Pierce began working for the Philadelphia Department of Prisons (hereinafter "Defendant" or "the City") in 2002, initially as a Social Worker II and, beginning in 2006, as Social Work Supervisor. (1/8/19, 43:19-22, 46:2-4).

Defendant, including the Department of Prisons, has a policy of considering an employee's race in making personnel decisions:

- Tracey Delaney is the highest ranking Human Resources representative in the Department of Prisons.  She testified that since Mayor Kenney became the Mayor of Philadelphia, in January of 2016, Defendant has a policy of considering race in employment decisions and that such a policy is discriminatory.  (1/9/19, 61:15-24, 70:12-73:19, 96:10-14).

---

[1] All Trial Transcript citations reference the date of trial and the specific citation to the record.

- Deputy Commissioner Robert Tomaszewski testified the City has a policy of considering race in hiring and promotion decisions since 2016. (1/9/19, 214:19-215:8).

- Former Acting Commissioner Michael Resnick testified that since Mayor Kenney became Mayor of Philadelphia, the City considers and looks at race in personnel decisions. (1/10/19, 144:20-144:9).

- Brian Abernathy, First Deputy Managing Director of the city of Philadelphia (and Commissioner Carney's supervisor), testified that the City's hiring decisions are viewed through a lens of diversity (1/10/19, 17:13-21, 155:18-5).

On March 18, 2016, Councilwoman Maria Quinines-Sanchez, who is an employee of the City, sent an email to Mr. Abernathy. The email **attached the resume of Jennifer Albandoz**, Social Work Supervisor, who is Hispanic, and stated, "Brian, [a]s you finalize the selection of the Prisoner Commissioner, I wanted to bring to your attention a highly qualified **Latina** in the system. We have no high ranking **Latinos** in the Prisons….When I spoke with Mayor Kenney yesterday, we discussed how we really need to try to get his **Latino** appointments up. **This may work.**" (Trial Exhibit 15 (all trial exhibits are attached hereto as Exhibit B and will be referred throughout as "Exhibit __"); 1/10/19, 25:20-26:1) (emphasis added). Mr. Abernathy understood Councilwoman Quinones-Sanchez was recommending Ms. Albandoz in part because of her race, **Hispanic**, and that this request was illegal. (1/10/19, p. 28-29; 29:1-3). Mr. Abernathy is responsible for ensuring that the City follows its anti-discrimination policies. (1/10/19, 29:9-11). Yet, he forwarded Councilwoman Sanchez request to his subordinate, Commissioner Carney, stating that he "wanted this on [her] radar." (1/10/19, 29:4-8; Exhibit 15). Councilwoman Quinones-Sanchez and Mr. Abernathy additionally spoke by phone, wherein she reiterated that she wanted to ensure a **Latino** was placed in a high ranking position in the Department of Prisons. (1/10/19, 31:1-7). Mr. Abernathy informed Commissioner Carney about this conversation. (1/10/19, 31:8-15). Commissioner Carney is ultimately responsible for all hiring

decisions at the Department of Prisons. (1/9/19, 198:9-11; Exhibit 3 at 2106).

On April 16, 2016, Rafaela Colon, a former member of the Philadelphia Prisons Board of Trustees, sent a letter to Mr. Abernathy. The letter noted "that for several years now, the Philadelphia Prison System has lacked **Latino** representation on…the executive staff." (Exhibit 16) (emphasis added).  Ms. Colon "challeng[ed] the new city administration and its department to utilize their position…by appointing a qualified, competent, and experienced Latino" specifically urging Defendant "***to consider Ms. Albandoz***." (*Id.*) (emphasis added).   Mr. Abernathy understood that Ms. Colon was recommending Ms. Albandoz due to her race. (1/10/19, 34:8-14). Nevertheless, on April 17, 2018, Mr. Abernathy forwarded Ms. Colon's email to Commissioner Carney and Former Acting Commissioner Resnick and requested that Commissioner Carney provide him with "a list of the highest ranking latinos" employed by the Department of Prisons. (Exhibit 17; 119:10-18).   Commissioner Carney and Mr. Resnick understood that Ms. Colon was recommending Ms. Albandoz, at least in part, because she was **Hispanic**. (1/9/19, 117:14-20; 1/10/19, 148:19-5).   Commissioner Carney gathered the requested information and provided it to Mr. Abernathy. (Exhibit 20).

On April 18, 2016, Mr. Abernathy drafted a response to Ms. Colon's letter and sent it to Commissioner Carney and Mr. Resnick for review. (Exhibit 19; Exhibit 21). Commissioner Carney reviewed the response letter (Exhibit 19; Exhibit 21; 1/9/19, 120:12-122:7, 130:3-19, 1/10/19, 32:17-21). The draft response letter stated "we recognize that a broader representation is important and we will do what we can to promote **Latinos** within the confines of civil service regulations." (Exhibit 21) (emphasis added)   Commissioner Carney reviewed the letter and agreed with its contents.  (1/9/19, 120:24-122:7). The final version of the letter was sent to Ms. Colon on April 18, 2016 and contained the same assurance. (Exhibit 22; 1/10/19, 42:24-43:2).

Commissioner Carney and Mr. Resnick were copied on the final letter. (Exhibit 22).

In response to Councilwoman Sanchez and Ms. Colon's recommendations, Mr. Abernathy informed Commissioner Carney to "keep an eye on the issue of "hir[ing] **Latinos** into high level positions" because he wanted "to make sure that it didn't become a larger political issue."   (1/10/19, 35:9-36:15). Around this time, Commissioner Carney told Deputy Commissioner Robert Tomaszewski that "Brian Abernathy and an individual named Colon [were pressuring her] to hire a **Hispanic** individual," referring to Ms. Albandoz, for the HSPA position. (1/9/19, 219:8-220:1).

When the HSPA position, which is civil service, became available, Commissioner Carney could have awarded it to Ms. Pierce without making her interview.  (1/9/19, 98:4-20, 134:16-23, 144:18-145:7). However, Commissioner Carney interviewed a second candidate, Ms. Albandoz. (1/9/19, 144:18-145:7).  On June 24, 2016, Ms. Pierce and Ms. Albandoz interviewed for the HSPA position before an interview panel of five individuals. (1/9/19, 64:22-24, 176:4-10). Commissioner Carney promoted Ms. Albandoz over Plaintiff into the HSPA position. (1/9/19, 163:9-14, 198:9-11). At the time that Commissioner Carney made that decision, she knew that Ms. Albandoz was Hispanic and that Ms. Pierce was not Hispanic.  (1/9/19, 163:9-14)

Ms. Pierce was substantially more qualified than Ms. Albandoz.  She ranked higher on the civil service exam, had more  experience as social worker, more experience as a social work supervisor, better performance reviews, and more certifications. (Exhibit 11, Exhibit 104, Exhibit 105, 1/8/19, 62:20-64:5, 1/9/19, 152:2-7).

Based on his conversation with Commissioner Carney, Mr. Tomaszewski thereafter informed Ms. Pierce that Commissioner Carney "was being pressured to hire a **Hispanic** individual to the HSPA position." (1/9/19, 222:12-17).

### B. Plaintiff Suffered Severe Emotional Distress As A Result of Defendant's Retaliatory Conduct

Plaintiff suffered emotional distress as a result of Defendant's retaliatory conduct. She testified as follows:

- When Plaintiff was issued the first Employee Violation Report ("EVR") following the filing of her discrimination charge, she testified that, "[i]t affected me horribly. I had never been so scared in my entire life. I had never had my job put on the line or recommended to be terminated. I, I was having a really hard time functioning. I believe around the same time I actually started my family medical leave. It was just an absolutely horrible three months of waiting to find out what was going to happen." (1/8/19, 65:12-14, 74:3-13).

- Plaintiff further testified that she took a leave of absence pursuant to the Family Medical Leave Act ("FMLA") because "was suffering from anxiety, depression, headaches, horrible stress, which was aggravating [her] irritable bowel symptoms." (1/8/19, 74:14-18).

- Plaintiff recounted that the retaliatory harassment caused her to have severe symptoms, including panic attacks and chest pains "to the point where [she] thought [she] was having a heart attack." She also testified that she began "taking medication and seeing a therapist" due to Defendant's actions. (1/8/19, 87:8-22).

- Plaintiff was subsequently issued a second EVR. In this regard, she testified that "[i]t affected me worse than I, worse than it was the first time because now I'm feeling okay, they're really coming after me. This was again I felt like my job was being challenged, my entire career and everything that I've worked for was under the gun, was at risk of losing it. It was horrible." (1/8/19, 101:7-14).

- Plaintiff testified further:

  **Q.** What's been the worst part of all this for you?

  **A.** That's a hard answer, say the worst 'cause this is – the whole thing has been the worst, worst I've ever experienced or been through really in my life to, to the mental health part, the depression, anxiety. To be honest...I didn't feel this bad when I lost my mother. It just really took a toll on me physically and I felt hopeless, I still feel hopeless...
  ...
  **A.** But I think what has, what has been the hardest and the worst part of this for me and I'll be honest has been being away from my family and being away from my children. I have been absent for almost two years because I have just not been able to interact with my family, I've not been able to do things with my kids

5

because I've been depressed. Because I feel like I'm a burden because people are always wondering how I'm feeling, so I can't get that time back. My kids are always saying I've missed birthday parties, I've missed horseback riding lessons, I've done – I've missed so much of their lives, I can't get that time back. So, if you're asking me what the worst part of this all has been is being absent from my family, thank God they've been supportive, but I've been absent from my family and again I can't, I can't get that time back. I'm hoping to make a change, but I can't get that time back and that – seeing it in… the kids eye's (sic) have bene (sic) horrible." (1/8/19, 112:12-19, 113-11-25, 114:1-2).

This testimony was corroborated by Plaintiff's wife, Roberta Selleck, who explained that Ms. Pierce "would be frustrated and she for about a year would come home lay down on the couch and go to sleep to the point where the kids were like, mommy's always sleeping. Then she would – she just seemed depressed. At some point she decided how unhealthy this was and decided to get help. So, she went to her doctor and he put her on anxiety medication and she started seeing a therapist." (1/8/19, 49:8-14). Plaintiff also offered objective evidence of emotional harm due to the Defendant's retaliation and harassment, including a note submitted by her physician. (Exhibit 90).

## III.   LEGAL ARGUMENT

### A.   Plaintiff Is Entitled To Judgment As A Matter Of Law That Race Was A Motivating Factor In Defendant's Decision Not to Promote Her To The HSPA Position

Plaintiff is entitled to Judgment as a Matter of Law that race was a motivating factor in Defendant's decision not to promote her to the HSPA position. Pursuant to Fed.R.Civ.P. 50, a court may rule against a party as a matter of law after the non-moving party is fully heard on an issue at trial, if there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. "When considering judgment as a matter of law, the question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.'"

6

*Ozlek v. Potter,* 2006 U.S. Dist. LEXIS 19019, *7-8 (E.D. Pa. Apr. 13, 2006)(internal quotations omitted), *aff'd,* 259 Fed. Appx. 417 (3d Cir. 2007).  In determining whether to grant judgment as a matter of law, the court "must draw all reasonable inferences in favor of the non-moving party, may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.,* 540 U.S. 133, 149 (2000).

Title VII, the PHRA, and the PFPO each prohibit an employer from discriminating against an employee based on race.  However, Title VII is unique in a key respect. Title VII was amended by the Civil Rights Act of 1991 to mandate liability when race "was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m). The 1991 Amendment sought to limit situations where impermissible factors, such as race, **infected the minds of decision makers**. In other words, there are two parts to the mixed motive question.  The first, upon which the plaintiff has the burden, is whether it is more likely than not that race played a role in the mind of the decision-maker.  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 248 (1989).   The issue is, thus, not whether race played the dispositive role, but merely whether the Plaintiff proves race "played a part" in the adverse employment decision. *See Third Circuit Model Jury Instructions* 5.1.1. Therefore, "a plaintiff need only 'demonstrate' that an employer used a forbidden consideration with respect to 'any employment practice.'"  *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 99 (2003).  Once the plaintiff shows race played a role in the decision, the second part of the mixed motive question requires *the defendant to prove* it would have made the same adverse employment decision anyway. *Watson v. SEPTA,* 207 F.3d 207, 216 (3d Cir. 2000); 42 U.S.C. § 2000e-5(g)(2)(B).  A plaintiff may demonstrate that race was a motivating factor by either or both "direct" or "circumstantial" evidence. *Id.* at 101-02.

7

The uncontroverted evidence presented in this case establishes that race played a part in the minds of Defendant's decision-maker concerning the position of HSPA. It is undisputed that Defendant's highest ranking employees testified that Defendant has a policy of considering an employee's race in making personnel decisions and that such a policy has existed since January of 2016 when Mayor Kenney became the Mayor of Philadelphia. (1/9/19, 61:15-24, 70:12-73:19, 96:10-14, 214:19-215:8; 1/10/19, 17:13-21, 155:18-5, 144:20-144:9).

Consistent with this policy, undisputed evidence shows that the City discussed and considered Ms. Albandoz' race throughout the decision-making process that culminated in her promotion to HSPA over Ms. Pierce. The undisputed facts makes this clear:

- On March 18, 2016, Councilwoman Quinones-Sanchez sent an Email to Mr. Abernathy, *attaching Ms. Albandoz' resume*. The email stated:"Brian, [a]s you finalize the selection of the Prisoner Commissioner, I wanted to bring to your attention a highly qualified *Latina* in the system.  We have no high ranking *Latinos* in the Prisons....*When I spoke with Mayor Kenney yesterday, we discussed how we really need to try to get his Latino appointments up.  This may work*. (Exhibit 15; 1/10/19, 25:20-26:1) (emphasis added).

- Mr. Abernathy understood that Councilwoman Quinones-Sanchez was recommending Ms. Albandoz due to her race and that her recommendation was illegal. (1/10/19, p. 28-29; 29:1-3).

- Mr. Abernathy is responsible for insuring that illegal discrimination does not exist in the workplace. (1/10/19, 29:9-11).

- Nevertheless, on April 1, 2016, instead of ignoring this illegal, race-based recommendation, Mr. Abernathy forwarded it to his subordinate, Commissioner Carney. Commissioner Carney accepted the illegal, race-based, recommendation. (1/10/19, 29:4-8; Exhibit 15).

- On April 16, 2016, Ms. Colon, a former member of the Philadelphia Department of Prisons Board of Directors sent a letter to Mr. Abernathy advocating that the City discriminate against non-Latino employees.  The letter noted "that for several years now, the Philadelphia Prison System has lacked **Latino** representation on...the executive staff."  Ms. Colon "challeng[ed] the new city administration and its department to utilize their position...by appointing a qualified, competent, and experienced **Latino**" specifically urging Defendant "*to consider Ms. Albandoz.*" (Exhibit 16)

8

- Mr. Abernathy understood that Ms. Colon was recommending Ms. Albandoz, due to her race. (1/10/19, 34:8-14).

- On April 17, 2018, instead of ignoring this illegal, race-based recommendation, Mr. Abernathy forwarded Ms. Colon's request to his subordinate, Commissioner Carney and Former Acting Commissioner Resnick, and requested that they provide him with "a list of the highest ranking **latinos**" employed by the Department of Prisons. (Exhibit 17; 119:10-18).

- Commissioner Carney gathered the list of the highest ranking **latinos** and provided that information to Mr. Abernathy on April 18, 2018. (Exhibit 20).

- On April 18, 2016, Mr. Abernathy drafted a response to Ms. Colon's letter and sent it to Commissioner Carney for review. The draft response letter stated "we recognize that a broader representation is important and we will do what we can to promote **Latinos** within the confines of civil service regulations." Commissioner Carney reviewed the letter and agreed with its contents. (Exhibit 19; Exhibit 21; 1/9/19, 120:12-122:7, 130:3-19; 1/10/19, 32:17-21).

- On April 18, 2016, Mr. Abernathy, in conjunction with Commissioner Carney, responded to Ms. Colon, stating, "we will do what we can to promote **Latinos** within the confines of civil service regulations." The HSPA position is a civil service position. (Exhibit 22; 1/10/19, 42:24-43:2).

- In response to Councilwoman Sanchez and Ms. Colon's recommendations, Mr. Abernathy informed Commissioner Carney to "keep an eye on the issue of "hir[ing] Latinos into high level positions" because he wanted "to make sure that it didn't become a larger political issue." (1/10/19, 35:9-36:15).

When the HSPA position became available, Commissioner Carney could have awarded it to Ms. Pierce without making her interview for it, since she ranked the highest on the civil service list and had already been deemed unanimously acceptable by an interview panel. (1/9/19, 144:18-145:7). However, Commissioner Carney interviewed a second candidate, Ms. Albandoz. (1/9/19, 144:18-145:7). On June 24, 2016, Commissioner Carney promoted Ms. Albandoz, a Hispanic individual, to the position of HSPA. (1/9/19, 64:22-24, 176:4-10).

By enacting a policy of considering race and forwarding the race-based, illegal recommendations to the decision-maker (Commissioner Carney), Defendant allowed race to

infect the decision-maker's mind and the decision-making process. This is exactly what the 1991 Amendments seek to prohibit in the mixed-motive analysis, and therefore, judgment should be entered for Plaintiff on this question. The burden then shifts to Defendant to prove it would have made the same decision even if race had not been present.

It is therefore undisputed that Defendant "used" and allowed race "to affect its decision-making process." *Price Waterhouse*, 490 at 248; *Desert Palace, Inc.*, 539 U.S. at 99 (2003). Defendant's decision to allow race to infect Commissioner Carney's mind and the decision-making process undisputedly demonstrates that race played a part in Defendant's decision to promote Ms. Albandoz over plaintiff to the HSPA position. *Third Circuit Model Jury Instructions* 5.1.1. Thus, Plaintiff presented to the jury overwhelming undisputed evidence that race was a motivating factor in Defendant's decision not to promote her to HSPA. Given that there is no legally sufficient evidentiary basis for a reasonable jury to have found for Defendant, this Court should grant Plaintiff's Motion for Judgment as a Matter of Law.

    **B.**    **Plaintiff Is Entitled To A New Trial On The Issues Of Race As A Determinative Factor, Motivating Factor, Should the Court Not Award Plaintiff Judgment As a Matter of Law On Motivating Factor, And Municipal Liability**

If the Court does not grant judgment as a matter of law in favor of Plaintiff on Motivating Factor (Question No. 2) then the Court should vacate the verdict as to that issue and order a new trial; the Court should also vacate the verdict as to Question No. 3 (determinative factor) and Question No. 4 (municipal liability) and order a new trial, because the verdict regarding Questions Nos. 1, 3, and 4 was: (1) against the great weight of the evidence; (2) the result of counsel engaging in improper conduct during closing argument that had a prejudicial effect on the jury; and (3) the result of a significant error of law to the prejudice of Plaintiff.

Rule 59(a) permits a court to grant a new trial "for any reason for which a new trial has heretofore been granted in actions at law in federal court." Fed. R. Civ. P. 59(a). A new trial may be granted even when judgment as a matter of law is inappropriate. *Wagner v. Fair Acres Geriatric Ctr.,* 49 F.3d 1002, 1017 (3d Cir. 1995). The decision whether to grant a new trial following a jury verdict is within the sound discretion of the trial court. *See, e.g., Blancha v. Raymark Indus.,* 972 F.2d 507 (3d Cir. 1992)(*citing Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980)).

Unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *Belden Tech., Inc. v. Superior Essex Communications LP,* 802 F. Supp. 2d 555, 562 (D. Del. 2011)(*citing Allied Chem. Corp.,* 449 U.S. at 36 (1980); *Valentin v. Crozer-Chester Medical Center,* 986 F. Supp. 292, 298 (E.D. Pa. 1997). When reviewing a motion for a new trial "the trial judge may consider the credibility of witnesses and the weight of the evidence." *Young v. Pleasant Valley School Dist.,* 2012 U.S. Dist. LEXIS 69762, *8 (M.D. Pa. May 18, 2012) (*quoting* 9B *Wright & Miller, Federal Practice & Procedure §* 2531 (3d ed. 2012)). "A new trial may be granted when the verdict is contrary to the great weight of the evidence; that is, where a miscarriage of justice would result if the verdict were to stand." *Pryer v. C.O. 3 Slavic,* 251 F.3d 448, 453 (3d Cir. 2001) (internal quotations omitted).

New trials are usually granted in the following situations: (1) the verdict is against the weight of the evidence; (2) the size of the verdict is against the weight of the evidence; (3) counsel engaged in improper conduct that had a prejudicial effect on the jury; or (4) there is a significant error of law, to the prejudice of the moving party. *See, e.g., Maylie v. Nat'l R.R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa.1992), *aff'd,* 983 F.2d 1051 (3d Cir. 1992).

**1. The jury's verdict that race was not a motivating factor was contrary to the great weight of evidence and therefore Plaintiff should receive a new trial**

If the Court does not grant Plaintiff's Motion for Judgment as a Matter of Law on the Motivating Factor claim, then the court should, alternatively, provide Plaintiff with a new trial on this issue. The jury's verdict that race was not a motivating factor in Defendant's decision not to promote her to HSPA was against the great weight of the evidence and a miscarriage of justice, warranting a new trial on Plaintiff's Title VII claim. For all the reasons discussed in Section III.A.,*supra*, this Court should, at a minimum, grant Plaintiff's Motion for a New Trial. Furthermore, given that the Court may assess credibility, weigh the evidence, and need not view the evidence in a light most favorable to Defendant, additional facts, warrant the Court's granting a new trial. That evidence includes:

- Mr. Resnick and Commissioner Carney are the only two panelists who received correspondence recommending that Ms. Albandoz be hired into a high ranking position because of her race, Hispanic, and are the only two that recommended Ms. Albandoz for the position after the interview. (1/10/19, 133:15-19; Exhibit 17; Exhibit 19; Exhibit 22).

- Commissioner Carney told Mr. Tomaszewski, in the spring of 2016, that she was being pressured to promote Ms. Albandoz into the HSPA position. Specifically, Commissioner Carney told Mr. Tomaszewski that she was being pressured by "Brian Abernathy and an individual named Colon…to hire a **Hispanic** individual for that position." (1/9/19, 219:8-220:1).

- Around the same time that Mr. Tomaszewski testified this conversation occurred, Commissioner Carney received correspondence from Mr. Abernathy and Ms. Colon recommending that Ms. Albandoz be promoted because of her race. Mr. Tomaszewski was not copied on any of these emails and could not have had knowledge of their content absent Commissioner Carney informing him of the same. (Exhibit 15; Exhibit 17).

- In September of 2016, Mr. Tomaszewski informed Ms. Pierce that Commissioner Carney "was being pressured to hire a Hispanic individual to the HSPA position." (1/9/19, 222:12-17).

- Ms. Pierce was substantially more qualified than Ms. Albandoz. She ranked higher on the civil service exam, had more experience as social worker, more experience as a social work supervisor, better performance reviews, and more certifications. (Exhibit 11, Exhibit 104, Exhibit 105, 1/8/19, 62:20-64:5, 1/9/19, 152:2-7).

Therefore, to find in the City's favor, the jury had to:

- Ignore the undisputed evidence that the City has a policy of considering race;

- Ignore that Mr. Abernathy received recommendations for Ms. Albandoz that were based on her race and illegal;

- Ignore that Mr. Abernathy nevertheless forwarded those illegal, race-based, recommendations to Mr. Resnick and his subordinate, Commissioner Carney, who was ultimately responsible for all hiring decisions at the Department of Prisons;

- Ignore that the Mr. Abernathy, Mr. Resnick, and Commissioner Carney promised to "do what [they could] to promote **Latinos** within the confines of civil service regulations;"

- Ignore that after the City promised to "do what we can to promote **Latinos**", Commissioner Carney afforded Ms. Albandoz the opportunity to interview for the HSPA position, instead of simply promoting Ms. Pierce;

- Ignore the fact that Ms. Pierce was substantially more qualified than Ms. Albandoz;

- Believe it was a coincidence that the only two panelists to vote for Ms. Albandoz' promotion were also the only two panelists who received correspondence recommending that Ms. Albandoz be promoted due to her race; and

- Believe it was a coincidence that at the exact time Mr. Tomaszewski testified Commissioner Carney told him she was being pressured to promote Ms. Albandoz because of her race, she happened to receive correspondence consistent with exactly what she told Mr. Tomaszewski.

To put it simply, to find that race was not a motivating factor in the decision not to promote Ms. Pierce is to reach a determination against the great weight of the evidence and is a miscarriage of justice. As such, Plaintiff respectfully request that this Court vacate the jury's verdict as to the issue of race as a motivating factor and order a new trial.

2. **The jury's verdict that race was not a determinative factor and that Defendant was not liable under Section 1983 was contrary to the great weight of evidence and therefore Plaintiff should receive a new trial**

A determinative factor means "that if not for" race, Ms. Pierce would have been promoted to HSPA. *Third Circuit Model Jury Instructions* 5.1.2. For a plaintiff to recover under

§ 1983, she must establish that the defendant acted under color of state law to deprive plaintiff of a right secured by the Constitution." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (*citing West*, 487 U.S. at 48). For all the reasons discussed in III.A. and III.B.1, *supra*, this Court should conclude that the jury's determination that race was not a determinative factor (Question No. 3) and that Plaintiff did not prove liability under Section 1983 (Question No. 4) was against the great weight of the evidence and is a miscarriage of justice. As such, Plaintiff respectfully requests that this Court vacate the jury's verdict as to the issue of race as a determinative factor and Section 1983 and order a new trial.

### 3.   Defendant's counsel engaged in wholly improper conduct during her closing argument and therefore Plaintiff should receive a new trial

A new trial should be granted based on the improper conduct by counsel in closing argument. It is grounds for a new trial when, as here, improper assertions made during closing argument by defense counsel make it reasonably probable that the jury's verdict was influenced by prejudicial statements. *Fineman v. Armstrong World Indus.,* Inc., 980 F.2d 171, 207 (3d Cir. 1992), *cert. denied,* 122 L.Ed. 677 (1993); *see also   Draper v. Airco, Inc.,* 580 F.2d 91, 95 (3d Cir. 1978) (holding that the refusal of a district court to grant a new trial because of prejudicial remarks made by counsel in his closing argument was reversible error despite the curative instruction given by the district court).

In her closing argument, Defendant's counsel improperly appealed to the jurors by offering multiple statements of personal belief/opinion. *See e.g. Draper*, 580 F.2d at 95 (recognizing that counsel cannot offer their personal opinion); *Gilster v. Primebank*, 747 F.3d 1007, 1013 (8th Cir. 2014) (remanding for a new trial, *inter alia,* on the basis that counsel's closing made references to her own experiences of harassment compared to that of the plaintiff); *Argue v. David Davis Enters.*, 2009 U.S. Dist. LEXIS 32585, at *59 (E.D. Pa. Mar. 20, 2009)

(noting that counsel cannot offer their personal opinion); *Waite v. Neal*, 918 F. Supp. 133, 134 (E.D. Pa. 1996) ("Remarks which are not supported by the evidence and which are designed to appeal to the jury's prejudice or passion such as the golden rule argument are also improper"). Defendant's counsel's closing began with a testimony of her own personal experiences as a minority candidate in various interview processes. At the very beginning of her closing, counsel offered the following:

> Like Ms. Pierce **I** was ten years out from my Master's degree, **I** had ten years' worth of work experience in the field, and **I** knew that my background and all of the training that **I** had as well would make me perfect for that job. So, **I** went into the job interview, **I** went in, no one [looked like me] and that was okay . . . . Shortly after my interview **I** got the notice, and the notice told me **I** was not selected. **I** had two choices at that point. **My** first choice was to be introspective, **I** needed to zero in on what – why **I** didn't get the position so that **I** could get the next one . . . . Second choice was to put the blame on the people in the room **that didn't look like me**, that would've been easy. But when you blame others, you fail to learn from your mistakes. **And that's what happened to Plaintiff.**" (1/11/19, 58:17-25, 59:1-12) (Emphasis added).

Defendant's counsel continued her closing argument with a <u>second</u> iteration of personal experience as a minority job applicant. Against the backdrop of her own perception of discrimination, counsel improperly offered that:

> **I** wake up every day, **I'm African-American**, does that mean that whenever **I** go into the world and **I** see another African-American **I** have a hidden motive or some sort of signal that has poisoned my decisions as it relates to them or if **I** see someone else that's not African-American do **I** somehow disfavor him because of that . . ., no." (Day 4, 64:6-14)

Not only did counsel, who is African American and specifically identified herself as such in her closing, inject *her own* personal experiences with *her own* perception of discrimination in hiring during the closing argument, as a person of color, counsel **expressly** ascribed *her own* experiences to Plaintiff. Her argument to the jury was essentially that, as a person of color, she "knows" that people of color think that race is a reason that they are turned down for positions, and that she herself as a person of color thought this too, yet, she has learned to be introspective

and see her own flaws – and that Plaintiff, as a person of color, has not learned to recognize her own flaws as minorities should do. Counsel's statements were wholly improper and prejudicial. The notion that Plaintiff's discrimination claims in the instant matter should be likened to counsel's *own* experiences is inappropriate in a closing argument and exceeds the limits of pure passion. In this regard, it is <u>more</u> than reasonably probable that jurors would be inclined to take the word of a minority attorney's experiences and apply the same to a case where race discrimination in the workplace is a central issue. Such remarks dramatically increase the likelihood that a jury will be improperly influenced.

In this instance, counsel additionally inappropriately insinuated that since *she* does not harbor discriminatory feelings toward people of ethnic or non-ethnic backgrounds, *Plaintiff's* claims of discrimination are somehow unfounded or invalid. Counsel's closing remarks were tremendously provocative, given the fact that the jury was ultimately charged with determining whether Plaintiff, a person of color, had been discriminated against because of her race.

Each of Defendant's counsel's narratives of personal experience, independently, give rise to the reasonable probability that the jury's verdict was influenced by the prejudicial statements. Taken as a whole, it is clear that these statements substantially exceeded the bounds of appropriateness. Given defense counsel's arguments invoking her own experiences as a minority applicant seeking a job, it is more than reasonably probable that a jury would prejudicially supplant the actual evidence of discrimination in this case with counsel's testimony of how discrimination manifests in hiring and promotions. The risk that the jury's verdict stemmed from an unfair comparison of defense counsel's minority experiences to Plaintiff's allegations of discrimination is substantial. As such, counsel's prejudice-invoking statements provide this Court the grounds to grant a new trial.

Furthermore, Defendant's Counsel personally attacked Plaintiff's counsel. Defense Counsel may not use closing arguments to launch unfounded attacks on the opposing party, his counsel, and his right to bring suit. *See, e.g., Draper*, 580 F.2d at 95 (granting new trial where counsel in his closing, *inter alia*, prejudicially referred to facts not in evidence, and without basis made prejudicial and insulting references to opposing counsel); *Falkowski v. Johnson*, 148 F.R.D. 132, 135 (D. Del. 1993) (new trial granted because counsel for plaintiff introduced extraneous matter in his closing argument, and impugned both defendant and defense counsel on irrelevant grounds); *Whittenburg v. Werner Enterprises, Inc.*, 561 F.3d 1122, 1133 (10th Cir. 2009) (reversing judgment and remanding for a new trial where counsel during closing introduced evidence not in record and attacked opposing party's right to bring suit).

In her closing, Defendant's counsel insinuated that Plaintiff's counsel coerced or otherwise inappropriately instructed Plaintiff to file a claim against Defendant. Specifically, while pointing to Plaintiff's counsel's table, defense counsel argued Plaintiff "chose . . . to view these acts as retaliation ***because of her team. "[Plaintiff's] attorneys are working to make sure that the lens that she sees all these actions are – is a retaliatory lens.***" (1/11/19, 77:2-25; 78:1-2) (emphasis added). Defendant's counsel was, therefore, suggesting that Plaintiff's counsel fabricated instances of retaliation and directed Plaintiff to perjure herself. This was a grossly improper and unfounded attack on Plaintiff's counsel that warrants a new trial.

Defendant's counsel also improperly argued in closing that Defendant did not discriminate because the Mayor of Philadelphia did not testify at trial. This Court precluded the Mayor from being deposed, thus preventing him from being called to testify at trial. Still, Defendant's counsel offered the following:

> "There's been a lot of discussion about the Plaintiff and one of the things that [Plaintiff's counsel] said was the mayor and councilwoman got together and decided they wanted to

promote Jennifer Albandoz. **Now did you hear any testimony from the mayor? Certainly, if the mayor had decided he wanted to promote Jennifer Albandoz because she's Hispanic, we would've had him on the stand. Plaintiff has been very thorough in excavating all of the information that is relevant to her case. You didn't hear from the mayor did you? That's because the mayor does not know Jennifer Albandoz.**" (1/11/19, 62:12-21) (Emphasis added).

In response to Plaintiff's counsel's objection on this statement, the Court offered the following curative instruction: "I nonetheless just wanted to point out and clarify one point from the closing arguments. In closing there were statements to the effect of the Plaintiff not having Mayor Kenney here to testify. You are to disregard that reference to Mayor Kenney and put it out of your mind, okay." (1/11/19, 90:19-91:8; 97:16-20).

The Court's curative instruction was not sufficient to remove the probability of prejudice from Defendant's counsel's closing. Importantly, "prejudicial utterance[s] at trial cannot always be cured even when the 'judge did everything possible in an effort to have the jury banish from their minds the thought…improperly injected.'" *Gordon v. Mercedes-Benz of N. Am.*, 1995 U.S. Dist. LEXIS 2324, *5 (E.D. Pa. Feb. 24, 1995) (*quoting Rebmann v. Canning*, 390 F.2d 71, 72-73 (3rd Cir. 1968)). In this regard, while curative instructions can be given to the jury to "disregard counsel's [remarks], that, in reality, can be a vain exercise. One can unring neither the bell, nor the insidiously illicit summation." *Id.* at *4.

Defendant's counsel argued to the jury that because the Mayor, who Plaintiff referenced throughout trial, did not testify at trial, the City did not discriminate against Ms. Pierce. Defendant was thus contending that not only did the City act lawfully, but that Plaintiff's counsel was trying to trick them into believing the contrary by arguing such without bringing in the Mayor. An instruction to "disregard" references to the Mayor did not remove the probability of prejudice from counsel's closing. The jury was neither instructed that the Mayor was prevented from testifying nor that his presence was not required for Plaintiff to prevail.   Given the

importance that Plaintiff placed on the Mayor and his policies throughout the trial, and Defendant's improper argument and implication, the bell could not be un-rung, and Plaintiff should receive a new trial.

In sum, "[w]here a closing address to the jury contains such numerous and serious violations of so many rules of proper argument as occurred here, we must conclude that it is more than 'reasonably probable' that the verdict was influenced by the prejudicial statements." *Draper*, 580 F.2d at 96-97.   As evidenced by Defendant's counsel's numerous improper, unfounded, and inflammatory remarks, Plaintiff respectfully requests this Court vacate the jury's verdict as to the issue of race as a motivating and determinative factor and on her Section 1983 claim and order a new trial.

> **4. A new trial should be granted because the Court made a significant error of law preventing Plaintiff from introducing evidence that the City hired Commissioner Carney due to her race which severely prejudiced Plaintiff**

Ms. Pierce should have should have been permitted to introduce evidence that the City hired Commissioner Carney due to her race.   Specifically, Plaintiff sought to introduce the testimony of Mr. Resnick and Mr. Abernathy that the City hired Commissioner Carney because of her race. (Deposition Transcript of Michael Resnick at 37:23-45:18), attached hereto as Exhibit C; Deposition Transcript of Brian Abernathy at 145:14-146:10, attached hereto as Exhibit D). Federal Rule of Evidence 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   Rule 402 provides that "all relevant evidence is admissible."   Fed. R. Ev. 402.   However, Federal Rule of Evidence 403 provides that relevant evidence may be excluded "if its probative value is substantially

outweighed by the danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence."

Evidence that the City hired Commissioner Carney due to her race is relevant to Plaintiff's claims of discrimination. Fed. R. Ev 401.   Evidence of the City's decision to hire Commissioner Carney due to her race is probative of Plaintiff's allegation that the City has a policy of considering race in its personnel decisions.  The City's policy of considering race, aside from the stand alone Section 1983 claim, relates directly to Plaintiff's allegation that race was a motivating and/or determinative factor in the decision not to promote her. To put it another way, if the city has a policy of considering race in personnel decisions, it is clear that race, at minimum, motivated the City's decision not to promote Plaintiff to HSPA.   Nevertheless, this Court granted Defendant's Motion in Limine and denied Plaintiff's renewed request at trial. (Dkt. No. 66; Dkt. No. 55; 1/10/19, Page 55:4-57:24).  Therefore, the Court made a significant error of law by prohibiting Plaintiff from introducing such evidence to the prejudice of Plaintiff. As such, Plaintiff respectfully requests this Court vacate the jury's verdict as to the issue of race as a motivating and determinative factor and on her Section 1983 claim and order a new trial.

### 5.   A new trial should be granted because the Court made a significant error prohibiting Plaintiff from deposing Mayor James Kenney which severely prejudiced Plaintiff

Plaintiff should have been permitted to depose Mayor James Kenney.  Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 30. On September 22, 2018, Defendant produced the March 18, 2016 email from Councilwoman Quinones-Sanchez, attaching Ms. Albandoz' resume, which stated in pertinent part *"When I spoke with Mayor Kenney yesterday, we discussed how we really need to try to get his Latino appointments up.  This may work."* (Exhibit 15) (emphasis added). The email purported to show that Mayor Kenney was directly involved in the promotion of Ms.

Albandoz because of her race, or at minimum, had important information regarding the same. Therefore, Plaintiff filed a discovery letter, seeking to compel the production of Mayor Kenney for deposition (attached hereto as Exhibit E and incorporated herein by reference).

By Order dated October 5, 2018 (Dkt. No. 30), this Court denied Plaintiff's request to depose Mayor Kenney, thereby severely prejudicing Plaintiff. By being unable to depose Mayor Kenney, Plaintiff was denied the opportunity to learn pertinent information in support of her claim that race was a motivating and/or determinative factor in the decision not to promote her to HSPA and that the City had an illegal race-based hiring policy under Section 1983. This was a significant error of law that greatly prejudiced Plaintiff. As such, Plaintiff respectfully requests this Court vacate the jury's verdict as to the issue of race as a motivating and determinative factor and on her Section 1983 claim and order a new trial.

> **6. A new trial should be granted because the Court made a significant error of law allowing Defendant to elicit testimony from Ms. Pierce that she believes she was discriminated against regarding Defendant's failure to promote her to HSPA in 2015 which severely prejudiced Plaintiff**

The City should have been prohibited from introducing evidence that Ms. Pierce believes she was discriminated against in 2015 when she did not receive the HSPA position. Plaintiff filed a Motion in Limine to exclude such information (Dkt. No. 49, which is incorporated herein by reference). This Court denied Plaintiff's Motion in part, allowing the City to elicit evidence that Ms. Pierce believes she was discriminated against on the basis of race with regards to that decision. (Dkt. No. 66).

This Court made a significant error or law which severely prejudiced Plaintiff, in denying Plaintiff's Motion in part. Evidence that Plaintiff believed she was discriminated against in 2015 when the City failed to promote her is not relevant to whether she was, in fact, discriminated against in 2016 when the City again failed to promote her. *See Kimes v. Univ. of Scranton*, 2016

U.S. Dist. LEXIS 44274, at *4-5 (M.D. Pa. Apr. 1, 2016) (concluding that evidence relating to dismissed claims could not be introduced at trial); *Moore v. Univ. of Pittsburgh*, 2005 U.S. Dist. LEXIS 46338, at *13 (W.D. Pa. Mar. 11, 2005) (holding that evidence pertaining to dismissed claims could not be introduced at trial).

Any probative value of this evidence was substantially outweighed by its extremely prejudicial effect. Fed. R. Ev. 403.  Throughout trial, Defendant erroneously and prejudicially portrayed Plaintiff as someone who without factual basis believed adverse actions were due to her race.  (1/8/19, 118:25-123:6, 124:20-125:22; 1/9/19, 4:15-5:6, 12:2-5; 1/11/19, 59:10-60:17). This had nothing to do with Plaintiff's allegations of discrimination in 2016 and thus served to unfairly prejudice and confuse the jury, which severely prejudiced Plaintiff. As such, Plaintiff respectfully requests this Court vacate the jury's verdict as to the issue of race as a motivating and determinative factor and on her Section 1983 claim and order a new trial.

### 7. A new trial should be granted because the Court made a significant error of law charging  the jury and on the verdict sheet which greatly prejudiced Plaintiff

The Jury was improperly instructed that Plaintiff needed to prove that "her race", as opposed to "her race (non-Hispanic)" was a motivating and/or determinative factor in the decision not to promote her to HSPA. (1/11/19, 105:10-108:2) Similarly, the verdict sheet improperly required the jury to destermine whether Plaintiff proved that "her race", as opposed to "race", was a motivating and/or determinative factor in the decision. (Dkt. No. 73) Importantly, the Third Circuit acknowledges that the Model Instructions are not etched in stone, recognizing that "every case is unique, having its particular fact pattern" and therefore "care must be exercised when adapting the Model Instructions to the individual case." *Third Circuit Model Jury Instruction*, Introduction.  This is a unique case wherein the issue was not whether

Defendant discriminated against Ms. Pierce because she was Native American (i.e. they harbored a bias against Native Americans).   Rather, Ms. Pierce contended that the City discriminated against her because she is non-Hispanic. All the evidence that Ms. Pierce presented at trial was consistent with that theory.

Therefore, the Model Instructions and verdict sheet should have been modified to reflect this unique situation.   The jury should have been instructed to determine whether "her race (non-Hispanic)" was a motivating and/or determinative factor, not whether her race, Native American, was a motivating and/or determinative factor. Likewise the verdict sheet should have asked the jury to determine whether "race", as opposed to "her race" was a motivating and/or determinative factor.   As a result, the jury was tasked with determining whether Plaintiff was discriminated against because she is Native American, which was inconsistent with Plaintiff's theory of the case and all the evidence that she put forward during trial. This was a significant error of law that greatly prejudiced Plaintiff. As such, Plaintiff respectfully requests this Court vacate the jury's verdict and order a new trial.

**C.   The Jury's Verdict On The Issue of Damages Was Contrary To The Great Weight Of The Evidence And A Miscarriage Justice Would Result, Such that Plaintiff is Entitled To A New Trial On Damages**

Plaintiff should receive a new trial on the issue of damages (Question No. 6), pursuant to Fed. R. Civ. P. 59(a).   The decision to grant or deny a new trial is "confided almost entirely to the . . . discretion . . . of the trial court." *Shanno v. Magee Industrial Enterprises, Inc.*, 856 F.2d 562, 567 (*citing Allied Chemical Corp.*, 449 U.S. at 36 (1980). "A new trial may be granted when the verdict is contrary to the great weight of the evidence; that is, where a miscarriage of justice would result if the verdict were to stand." *Pryer,* 251 F.3d at 453 (3d Cir. 2001) (internal quotations omitted).

23

In *Pryer*, the Court ordered a new trial on damages after the jury awarded the plaintiff nominal damages. 251 F.3d 448.  There, the plaintiff complained that he was being subject to abuse by the defendant guards.  *Id.* at 449. At trial, the plaintiff testified as to both the subjective and physical harm that he sustained as a result of the defendant's abuse, as well as provided objective medical evidence. *Id.* at 453. The jury found for the plaintiff, however, awarded him $1.00 in nominal damages and no compensatory or punitive damages. *Id.* at 452. Following the verdict, the District Court, on its own motion, vacated the damages award and ordered a new trial against the defendants limited to the issue of damages. *Id.* at 450-452. In its written decision, the court held that "the jury's verdict on damages was against the weight of the evidence and that a new trial was 'necessary to avoid a miscarriage of justice.'" *Id.* at 453. Defendants appealed, maintaining that the court abused its discretion in granting a new trial. The Third Circuit affirmed the court's ruling, holding that the defendants "neither introduced evidence to dispute that [the plaintiff] had, in fact, suffered these injuries, nor challenged their nature, extent, and seriousness." *Id.* at 453. Given this evidence, the Third Circuit found that the court did not abuse its discretion in concluding that an award of only $ 1.00 in nominal damages was against the weight of the evidence and that a new trial was required. *Id.* at 453-454.

As in *Pryer*, Plaintiff proffered an abundance of evidence demonstrating that Defendant's retaliation was the proximate cause of her actual emotional harm. (1/8/19, 65:12-14, 74:3-18, 87:8-22, 101:7-14, 112:12-19, 113-11-25, 114:1-2). Despite finding that Plaintiff proved that she was retaliated against for her complaints of discrimination, the jury awarded her no compensatory damages and $1.00 in nominal damages.  The jury's verdict was against the great weight of the evidence that Plaintiff suffered actual emotional harm.

Plaintiff testified to actual emotional distress as a result of Defendant's retaliation on several occasions. (*Id.*). This testimony was corroborated by the testimony of Plaintiff's wife, Ms. Selleck. (1/10/19, 49:8-14). Plaintiff's testimony of severe emotional distress due to Defendant's retaliation was further corroborated by a physician who authored a note indicating that Plaintiff was being subjected to serious health threats, stemming from Defendant's retaliation. (Exhibit 90). Plaintiff's doctor wrote that she suffered from anxiety, depression, and panic attacks, which affected her major life activities and daily work. (Exhibit 90 at City 615). As such, the jury's verdict of nominal damages on Plaintiff's retaliation claim is against the great weight of the evidence, such that it is a miscarriage of justice. Therefore, Plaintiff respectfully requests this Court vacate the jury's verdict as to the issue of damages and order a new trial.

## V.   **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests the Court grant her Motion Pursuant To Federal Rules Of Civil Procedure 50 And 59 For Judgment As A Matter Of Law and For A New Trial and enter the accompanying Order.